Melanie Sloan
D.C. Bar No. 454584
Anne L. Weismann
D.C. Bar No. 298190
Citizens for Responsibility
and Ethics in Washington
11 Dupont Circle, N.W.
2nd Floor
Washington, D.C.  20036
202-588-5565

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND      :
ETHICS IN WASHINGTON                 :
11 Dupont Circle, N.W.               :
Washington, D.C.  20036              :
                                     :
              Plaintiff,             :
                                     :
       v.                            :  Civil Action No.
                                     :
U.S. DEPARTMENT OF STATE             :
2201 C Street, N.W.                  :
Washington, D.C.  20520              :
                                     :
              Defendant.             :
_____:

**COMPLAINT FOR
<u>DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF</u>**

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, as amended, as well as agency FOIA regulations, challenging the failure of the U.S. Department of State ("State") to fulfill the request of Plaintiff for documents relating to State's response to offers by foreign governments to assist in relief efforts for hurricane Katrina.

2.  This case seeks declaratory relief that Defendant is in violation of the FOIA for failing to fulfill Plaintiff's request for records, in violation of the FOIA and agency regulations for failing to grant Plaintiff's request for a waiver of fees, in violation of the FOIA and agency regulations for failing to expedite Plaintiff's FOIA request, and injunctive relief that Defendant immediately and fully comply with Plaintiff's request under the FOIA.

## JURISDICTION AND VENUE

3.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331.  Venue lies in this district under 5 U.S.C. §552(a)(4)(B).

4.  Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code.  CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials.  CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the governmental decision-making process.  CREW uses a combination of research, litigation, and advocacy to advance its mission.

5.  CREW has invested considerable organizational resources in pushing the U.S. government to take ethical issues seriously.  CREW monitors closely the laws and rules applicable to government agencies.

6.  CREW is harmed by State's failure to comply with the FOIA, because that failure harms CREW's ability to provide full, accurate, and current information to the public on a matter

of great public interest and urgency.  5 U.S.C. §552(a)(6)(C).

7.  Defendant State is an agency within the meaning of 5 U.S.C. §552(f).  Defendant is the
federal agency with possession and control of the requested records and is responsible for
fulfilling Plaintiff's FOIA request.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

8.  The FOIA, 5 U.S.C. §552, requires agencies of the federal government to release
requested records to the public unless one or more specific statutory exemptions apply.

9.  An agency must respond to a party making a FOIA request within 20 working days,
notifying that party of at least the agency's determination whether or not to fulfill the request, and
of the requester's right to appeal the agency's determination to the agency head.  5 U.S.C.
§552(a)(6)(A)(i).

10.  An agency must respond to a FOIA appeal within 20 working days, notifying the
appealing party of the agency's determination to either release the withheld records or uphold the
denial.  5 U.S.C. §552(a)(6)(A)(ii).

11.  In "unusual circumstances," an agency may delay its response to a FOIA request or
appeal, but must provide notice and must also provide "the date on which a determination is
expected to be dispatched."  5 U.S.C. §552(a)(6)(B).

12.  This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from
withholding agency records and to order the production of any agency records improperly
withheld from the complainant."  5 U.S.C. §552(a)(4)(B).

13.  The FOIA provides a mechanism for disciplinary action against agency officials who

have acted inappropriately in withholding records.  Specifically, when requiring the release of

improperly withheld records, if the Court makes a written finding that "the circumstances

surrounding the withholding raise questions whether agency personnel acted arbitrarily or

capriciously," a disciplinary investigation is triggered.  5 U.S.C. §552(a)(4)(F).

14.  The FOIA also requires each agency to promulgate regulations specifying a fee

schedule for the processing of FOIA requests and establishing procedures and guidelines for the

waiver or reduction of fees.   5 U.S.C. §552(a)(4)(A).  Defendant State's fee waiver regulations

are found at 22 CFR §§171.14-15.

15.  The FOIA also provides that documents should be produced at no charge to the

requester or at a reduced charge if "disclosure of the information is in the public interest because

it is likely to contribute significantly to public understanding of the operations or activities of the

government and is not primarily in the commercial interest of the requester."  5 U.S.C.

§552(a)(4)(A)(iii).  There is no counterpart to this statutory mandate in State's FOIA regulations.

16.  Under the FOIA, agencies are required to decide any appeal within 20 days

(excluding Saturdays, Sundays, and legal public holidays) after receipt of the appeal.  5 U.S.C.

§552(a)(6)(A)(i).

17.  A district court reviews any appeal of a fee waiver determination de novo.  The

court's review of the matter is limited to the record before the agency.  5 U.S.C.

§552(a)(4)(A)(vii)

18.  The FOIA also requires agencies to promulgate regulations that provide for expedited

processing of FOIA requests where the requester has demonstrated a "compelling need" as well

as "other cases determined by the agency."  5 U.S.C. §552(a)(6)(E)(i).  The statute defines

"compelling need" as including requests "made by a person primarily engaged in disseminating information" where there is an "urgency to inform the public concerning actual or alleged Federal Government activity."  Id. at §552(a)(6)(E)(v)(III).

19.  Defendant State's regulations mirror these requirements by providing for expedition upon a showing that "[t]he information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 22 CFR §171.12(b)(2).  The regulations further define "urgently needed" as where "[t]he information has a particular value that will be lost if not disseminated quickly. Ordinarily this means a breaking news story of general public interest."  Id. at §171.12(b)(2)(i).

20.  Agencies are required to make a determination on a request for expedition within 10 days "after the date of the request," 5 U.S.C. §552(a)(6)(E)(ii)(I), and to give "expeditious consideration" to administrative appeals of such determinations.  Id. at §552(a)(6)(E)(ii)(II). State regulations require the Defendant to decide appeals of denials of expedition within 10 days of receipt.  22 CFR §171.50(b).

21.  Agency decisions to deny or affirm denial of a request for expedition are subject to judicial review "based on the record before the agency at the time of the determination."  Id. at §552(a)(6)(E)(iii).

### FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

22.  In the aftermath of hurricane Katrina, there was an outpouring of offers of assistance from nearly 100 foreign governments and international organizations.  Elizabeth Williamson, Offers of Aid Immediate, but U.S. Approval Delayed for Days, *The Washington Post*, September 7, 2005 (attached as Exhibit A).  Yet, despite these offers, much of the assistance did not reach

the victims of hurricane Katrina in a timely manner, but was instead "mired . . in bureaucratic entanglements."  Id.

23.  According to many of the news accounts at the time, State's initial response to these myriad offers of assistance was inadequate, contributing to the failure of the offered aid to reach its intended beneficiaries.  For example, *The New York Times* reported that the United States was simply unprepared to receive the outpouring of aid from abroad, such as offers of helicopters, water purification equipment and telecommunications gear that were clearly needed in the ravaged Gulf Coast.  Joel Brinkley and Craig S. Smith, Storm and Crisis: Offers Pour In, But the U.S. is Unprepared, *The New York Times*, September 8, 2005 (attached as Exhibit B).  *USA Today* reported that despite assurances from State that foreign aid was welcome, "officials in Switzerland, Poland, Austria, Norway, India and South Korea . . . were waiting to hear when and where some donations could be sent."  Barbara Slavin, Some Foreign Attempts to Send U.S. Aid Stymied, *USA Today*, September 8, 2005 (attached as Exhibit C).

24.  The government's "bottlenecks and confusion" slowed delivery of foreign aid, to the frustration of overseas donors.  Id.  For example, a transport plane loaded with water purification systems and a cellular network was sitting for days in Sweden, ready to take off, but not given clearance by Washington.  Brinkley and Smith, *The New York Times*, September 8, 2005; Williamson, *The Washington Post*, September 7, 2005.  *See also* Farah Stockman, U.S. Sends Mixed Signals on Accepting Aid From Abroad, *The Boston Globe*, September 2, 2005 (attached as Exhibit D); Farah Stockman, U.S. Accepts Nearly $1B in Foreign Aid, *The Boston Globe*, September 8, 2005 (noting the "difficulties and delays that have dogged" the effort to coordinate foreign aid) (attached as Exhibit E).  Similarly, an offer of search-and-rescue divers from Canada

"has so far gone begging."  Williamson, *The Washington Post*, September 7, 2005.  And in

Germany, "a massive telecommunication system and two technicians await the green light to fly

to Louisiana, after its donors spent four days searching for someone willing to accept the gift."

Id.

### Plaintiff's FOIA Request and Follow-Up

25.  By letter dated September 7, 2005, pursuant to the Freedom of Information Act,

Plaintiff requested that State produce records relating to State's response to hurricane Katrina.

Letter from Melanie Sloan to Margaret P. Graefeld, Information and Privacy Coordinator, State,

September 7, 2005 (attached as Exhibit F).  Specifically, CREW sought all records discussing or

mentioning offers of foreign governments to assist in hurricane relief efforts and State's responses

to those requests.  CREW delineated eight specific offers of hurricane relief assistance from

foreign governments, including: (1) Denmark's offer of 10 large water purification units; (2)

Venezuela's offer of fuel supplies and other humanitarian relief; (3) the Netherlands' offer to send

a frigate from Curacao to New Orleans to offer emergency assistance and its offer to provide

teams to inspect the dikes; (4) Israel's offer of 70 to 80 tons of medical equipment, baby food,

diapers, and bedding materials; (5) Bangladesh's offer to send experienced disaster management

teams; (6) Pakistan's offer of doctors and paramedics; (7) Honduras' offer of flooding and

sanitation experts; and (8) Peru's offer of a medical team.  Id.

26.  CREW also sought all documents relating to State's responses to these and any other

offers, as well as communications between State and other government agencies concerning these

offers, including FEMA and the Department of Homeland Security.  Id  Finally, CREW sought all

communications between State and the White House regarding offers of assistance by foreign governments.  Id.

27.  In addition, CREW requested that State expedite the processing of CREW's request. Id.  As CREW explained, State's response to offers of assistance from foreign governments "is a 'breaking news story of general public interest'" that "concerns actions by the United States government."  Id., *citing* 22 CFR §171.12(b)(2)(i)-(ii).  CREW also explained that there is "particular urgency in informing the public about the circumstances surrounding the Department of State's response to hurricane Katrina."  Id.  And CREW spelled out how, as an entity that "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience,'" CREW satisfies the criteria for expedition.  Id., *quoting* American Civil Liberties Union v. U.S. Dep't of Justice, 321 F.Supp.2d 24, 30 n.5 (internal quotations omitted).

28.  CREW also requested a waiver of fees associated with processing its request, pursuant to 5 U.S.C. §552(a)(4)(A)(iii).  Id.  CREW explained that the subject of its request concerns "the operations of the federal government," "the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way," and CREW is making the request "primarily and fundamentally for non-commercial purposes."  Id.

29.  By letter dated October 6, 2005, Annett P. Hickerson, Requester Communications Branch, State, advised CREW that its request for expedition was denied.  Letter from Annett P. Hickerson to Melanie Sloan, October 6, 2005 (attached as Exhibit G).  The only explanation for

State's decision on expedition was that CREW "ha[s] not provided adequate justification for expedition." Id.

30. In that same letter State also advised CREW that its request for a fee waiver was denied. State failed to enunciate any tangible reason for this decision, and stated only that it had placed CREW in the "all other" requester category "[b]ased upon the information provided in [its] letter." Id.

31. State's letter of October 6, 2005, also stated that before State can process CREW's request, State needs additional information. Specifically, State requested that CREW provide the "type of records [sic] countries and/or organizations involved" as well as a "full description of incidents, meetings [sic] events, persons involved, etc., pertaining to the documents requested." Id. State did not explain, or address in any way, how CREW's very specific request which, *inter alia*, delineated eight specific offers of assistance from eight specific countries was deficient.

32. On October 25, 2005, CREW appealed both the decision of State to deny CREW's request for expedition and State's decision to deny CREW's request for a waiver of fees. Letter from Anne L. Weismann to Charlene Wright Thomas, October 25, 2005 (attached as Exhibit H). CREW set forth the multiple reasons why State's decision on expedition was wrong as a matter of law and fact, including how CREW had established a "compelling need" for the requested information. As CREW explained, the urgency of CREW's need for the information "is underscored by the fact that hurricane Katrina was followed by hurricane Rita, which also caused massive damage, and hurricane Wilma which . . . caused further devastation in Florida. If we are to learn from the government's past mistakes and hope to avoid, or at least minimize, the horrendous impact of hurricanes like Katrina and Rita, and improve coordination of offers of

assistance, the public must have immediate access to the kinds of documents CREW has requested." Id.

33. CREW further explained how it is "primarily engaged in disseminating information," pursuant to the requirements of 22 CFR §171.12(b)(2), and how it has published reports and disseminated information "to bring greater attention to the conduct of public officials so that the public will have a more effective voice . . ." Id.

34. CREW also explained how it satisfies fully the requirements for a fee waiver. Specifically, CREW established that "there has been wide public attention given to the government's response to hurricane Katrina and, in specific, the Department of State's response to offers of foreign aid. Records documenting more fully the nature of that response, how it was generated, and the involvement of other agencies as well as the involvement of the White House in that response will contribute significantly to the public's understanding of how the government responded to hurricane Katrina and its aftermath." Id.

35. Finally, CREW's appeal letter of October 25, 2005, took issue with State's assertion that CREW had not provided sufficient information for State to process the request. As CREW pointed out, not only was CREW's request very specific in its identification of offers of assistance and countries but, "given the widespread media attention to the Department of State's role in reviewing and processing foreign aid offers in response to hurricane Katrina, there cannot seriously be a question about what CREW is seeking." Id.

36. To date, Plaintiff has received no response to its appeal of State's initial determinations on expedition and Plaintiff's fee waiver request.

37. Under State regulations, State was required to make a determination with respect to

Plaintiff's appeal on expedition within 10 days of receipt. 22 CFR §171.50(b). According to

Plaintiff's calculations, State has long exceeded this mandated time-frame, even factoring in time

for mail delivery of the appeal.

38. The time limit for State to respond to Plaintiff's appeal on expedition has run out and

Plaintiff has constructively exhausted administrative remedies. 5 U.S.C. §552(a)(6)(C); *see also*

Judicial Watch v. Rossotti, 326 F.3d 1309, 1310, 356 U.S.App.D.C. 54, 55 (D.C. Cir. 2003);

Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 62, 287 U.S.App.D.C. 126, 131 (D.C. Cir.

1990).

39. By statute, State was required to decide CREW's appeal of the denial of its fee waiver

request within 20 days of receipt, excluding weekends and holidays. 5 U.S.C. §552(a)(6)(A)(i).

According to Plaintiff's calculations, the 20th day fell on November 28, 2005, allowing three

business days for mailing.

40. CREW has now exhausted its administrative remedies with respect to its request for a

waiver of fees associated with the processing of CREW's FOIA request. *See*, *e.g*., Oglesby v.

U.S. Dep't of Army, 920 F.2d 57, 65 (D.C. Cir. 1990).

## PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
### (Failure to Produce Records)

41. Plaintiff realleges and incorporates by reference all preceding paragraphs.

42. Plaintiff properly asked for records within State's control.

43. Plaintiff is entitled by law to access to the records requested under the FOIA, unless

Defendant makes an explicit and justified statutory exemption claim.

44. Therefore, Defendant violated FOIA's mandate to release agency records to the

public by failing to release the records as Plaintiff specifically requested.  5 U.S.C.

§§552(a)(3)(A), 552(a)(4)(B).

## CLAIM TWO
### (Failure to Respond)

45.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

46.  On September 7, 2005, Plaintiff properly filed a FOIA request with State.

47.  To date, Plaintiff has not received a substantive response from State and State has

exceeded the 20-working-day statutory time limit for such a response.  5 U.S.C. §552(a)(6)(A)(I).

48.  Therefore, State has violated the FOIA's mandate to respond to Plaintiff's FOIA

request within the statutory time period.

## CLAIM THREE
### (Improper Denial of Fee Waiver)

49.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

50.  Plaintiff has demonstrated that it is entitled to a waiver of fees associated with

processing its FOIA request because disclosure of responsive records will likely contribute

significantly to public understanding of the operations or activities of the government, and the

request is not primarily in the commercial interest of the plaintiff.

51.  Therefore, State violated FOIA's mandate to grant CREW a fee waiver and State's

own regulations when it denied CREW's request for a waiver of fees.  5 U.S.C.

§552(a)(4)(A)(iii); 22 CFR §§171.14-15.

## CLAIM FOUR

### (Improper Denial of Expedition)

52.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

12

53.  Plaintiff has demonstrated that it is entitled to expedition of its FOIA request, because there is a compelling need for the requested information and CREW is engaged primarily in disseminating information, as contemplated by State's regulations, 22 CFR §171.12(b)(2).

54.  Therefore, State violated FOIA's mandate to expedite Plaintiff's FOIA request and State's own regulations when it denied Plaintiff's request for expedition.  5 U.S.C. §552(a)(6)(E); 22 CFR §171.12(b)(2).


### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that State has violated the Freedom of Information Act by failing to lawfully satisfy Plaintiff's FOIA request of September 7, 2005;

(2) Order State to respond immediately to Plaintiff's FOIA request;

(3) Declare that State violated the Freedom of Information Act and agency regulations when it determined that Plaintiff is not entitled to a waiver of all fees associated with the processing of its FOIA request and Declare that Plaintiff is entitled to a fee waiver;

(4) Order State to release immediately all records responsive to Plaintiff's FOIA request at no cost to Plaintiff;

(5) Declare that State violated the Freedom of Information Act and agency regulations when it determined that Plaintiff is not entitled to expedition of its FOIA request and Declare that Plaintiff is entitled to expedition;

(6) Order State to expedite immediately its processing of Plaintiff's request;

(7) Award Plaintiff its reasonable attorney fees and litigation costs in this action, pursuant

to 5 U.S.C. §552(a)(4)(E); and

(8) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

_____
Melanie Sloan
(D.C. Bar No. 434584)
Anne L. Weismann
(D.C. Bar No. 298190)
Citizens for Responsibility and
  Ethics in Washington
11 Dupont Circle, N.W.
Washington, D.C.  20036
Phone: (202) 588-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated December 13, 2005

14